UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EUGENE JONES,

                            Plaintiff,

          v.

SERGEANT FURMAN,
C.O. CARPENDER,
C.O. BLY,
C.O. LOSITO,
C.O. JOHN DOE # 1,
C.O. JOHN DOE # 2,
C.O. JOHN DOE # 3,
C.O. JOHN DOE # 4,
NURSE JOHN DOE,
NURSE J. BRINK,
R. MURPHY, C.O.,
LANASA, C.O.,
D. HERSH, Nurse, and
T. LANASA, Correctional Officer,

                        Defendants.

**DECISION
and
ORDER**

**02-CV-939F
(consent)**

_____

APPEARANCES:        EUGENE JONES, *Pro Se*
                        95-B-1881
                        Sullivan Correctional Facility
                        Box 116
                        Fallsburg, New York 12733

                        ANDREW M. CUOMO
                        ATTORNEY GENERAL, STATE OF NEW YORK
                        Attorney for Defendants
                        STEPHEN F. GAWLIK
                        Assistant Attorney General, of Counsel
                        107 Statler Towers
                        Buffalo, New York 14202

## **JURISDICTION**

On May 7, 2003, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 58), filed February 18, 2005.


## BACKGROUND

Plaintiff Eugene Jones ("Plaintiff"), proceeding *pro se*, commenced this civil

rights action on December 27, 2002, alleging that while incarcerated at Southport

Correctional Facility ("Southport"), Defendants Sergeant Furman ("Sgt. Furman"), C.O.

Carpenter[1] ("Carpenter"), C.O. Bly ("Bly"), C.O. Losito ("Losito"), C.O. John Does 1

through 4 and Nurse Jane Doe (together, "the Doe Defendants"), and Nurse J. Brink

("Brink"), subjected Plaintiff to excessive force, cruel and unusual punishment and

acted with deliberate indifference to Plaintiff's medical needs, in violation of the Eighth

Amendment.  On March 27, 2003, an answer was filed by Defendants Sgt. Furman,

Carpenter, Bly, Losito and Brink.  On October 21, 2003, Plaintiff filed an Amended

Complaint (Doc. No. 21) ("Amended Complaint"), asserting essentially the same claims

against the original named Defendants, and naming new Defendants, including C.O.

Lanasa ("Lanasa"), C.O. R. Murphy ("Murphy"), and Nurse D. Hersh ("Hersh") in place

of the Doe Defendants.  Answers to the Amended Complaint were filed on November

13, 2003, by Defendants Sgt. Furman, Bly, Brink, Carpenter, and Losito (Doc. No. 22),

and on October 14, 2004, by Defendants Hersh, LaNasa and Murphy (Doc. No. 49).

On February 18, 2005, Defendant filed the instant motion seeking summary

judgment ("Defendants' motion").  Defendants also filed, on February 18, 2005, papers

---

[1] Plaintiff incorrectly spells Carpenter's name as "Carpender".

in support of the motion a Memorandum of Law (Doc. No. 59) ("Defendants'

Memorandum"), a Statement of Facts Not in Dispute (Doc. No. 60) (Defendants'

Statement of Facts"), and the Declarations of Defendants Brink (Doc. No. 61) ("Brink

Declaration"), Furman (Doc. No. 62) ("Furman Declaration"), Lanasa (Doc. No. 63)

("Lanasa Declaration"), Murphy (Doc. No. 64) ("Murphy Declaration"), Hersh, a/k/a

Weed (Doc. No. 65) ("Weed Declaration"), Carpenter (Doc. No. 66) ("Carpenter

Declaration"), Bly (Doc. No. 67) ("Bly Declaration"), and Losito (Doc. No. 68) ("Losito

Declaration").

In opposition to summary judgment, Plaintiff filed on June 8, 2005, a

Memorandum of Law (Doc. No. 72) ("Plaintiff's Memorandum"), a Statement of

Disputed Factual Issues and Questions (Doc. No. 73) ("Plaintiff's Statement of Facts"),

and the Declaration of Plaintiff (Doc. No. 74) ("Plaintiff's Declaration"), attached to

which are exhibits A though X ("Plaintiff's Exh(s). ___").  In further support of summary

judgment, Defendants filed on June 16, 2005 the Reply Declaration of Assistant

Attorney General Stephen F. Gawlik ("Gawlik") (Doc. No. 75) ("Gawlik Declaration").

Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment is GRANTED

in part and DENIED in part.


### FACTS[2]

Plaintiff's claims are based on separate incidents occurring on April 26, 2002 and

---

[2] Taken from the pleadings and motion papers filed in this action.

June 4, 2002.  Because Plaintiff's and Defendants' versions of the events concerning each incident vary greatly, and are critical to resolution of Defendants' motion, the court describes both.

**The April 26, 2002 Incident**

Plaintiff alleges that while incarcerated at the Southport Correctional Facility ("Southport"), on April 26, 2002, Defendants Sgt. Furman, and Corrections Officers Bly, Carpenter, and Lanasa, subjected Plaintiff to excessive force by engaging in an unprovoked physical attack on Plaintiff, and that following the attack, Defendants Thurman, Bly, Carpender, Lanasa and Nurse Brink ("Brink") acted with deliberate indifference to Plaintiff's medical needs by failing to treat Plaintiff for injuries allegedly sustained as a result of the attack.  First Claim for Relief, Amended Complaint at 4. According to Plaintiff, on the morning of April 26, 2002, Plaintiff was released from his prison cell to attend recreation, and Sgt. Furman proceeded to pat-frisk Plaintiff, and remarked that Plaintiff "like[d] to write, huh?  Well, we are going to give you something to write about."  *Id*.  Plaintiff maintains that after the pat-frisk concluded, Plaintiff "was directed back on to the company," and when Plaintiff reached the "shower area" he was struck on the right side of his head by Sgt. Furman, causing Plaintiff to fall to the floor, where Defendants Furman, Bly, Carpenter and Lanasa kicked, punched and jabbed at Plaintiff with batons.  *Id*.  According to Plaintiff, he was handcuffed and restrained with a wrist chain during the incident.  *Id*.

According to Plaintiff, after the incident, Defendants Bly and Carpenter dragged Plaintiff to his cell and placed him inside.  Amended Complaint at 4.  Plaintiff requested

that his injuries, including a sore and painful right ear, lumps behind his right ear and on the back of his head, small cuts on his nose and hand, and bruising on his ribs, back, and legs, be treated, but Sgt. Furman responded "Yeah, right!," and no treatment was provided at that time. *Id*.

Later, while Defendant Losito was on rounds, Plaintiff described his injuries to Losito and requested to see the nurse. Amended Complaint at 4. Losito responded that "the nurse will be around with medication and as long as you['re] still breathing [it's] not a[n] emergency." *Id*. Plaintiff never saw the nurse on April 26, 2002. *Id*. Rather, on April 27 or 28, 2002, Plaintiff informed Defendant Nurse Brink of his injuries and blood in his urine while Brink was distributing medications to the inmates. *Id*. at 5. Plaintiff maintains Brink did not believe Plaintiff and, instead, responded by calling Plaintiff a "trouble maker and liar." *Id*.

Defendants deny any force was used against Plaintiff on April 26, 2002. Rather, Defendants maintain that Plaintiff, during his daily exercise run on April 26, 2002, refused to comply with exercise procedures by repeatedly turning his head while undergoing a pat-frisk. As a result, Sgt. Furman ordered Plaintiff to stop turning his head and warned that Plaintiff's continued refusal to comply with proper exercise procedures would constitute an exercise refusal necessitating Plaintiff's return to his cell. Because Plaintiff continued to turn his head, he was placed in restraints and escorted back to his cell where the restraints were removed without incident.

According to Defendants, Plaintiff was seen by Nurse Brink on April 28, 2002 during Brink's regular rounds. Brink maintains that at that time, Plaintiff complained that since the previous evening, he had been passing blood in his urine, but made no other

complaints and exhibited no other signs or symptoms, and there was no indication that Plaintiff suffered from any serious ailment requiring immediate attention.  Brink Declaration ¶ 4.  Brink advised Plaintiff to increase his fluids intake and report any change in signs or symptoms, and also requested a urinalysis be ordered.  *Id*.  The urinalysis order was approved by Southport Medical Director Dr. Alves. and, on April 30, 2002, Plaintiff's urine sample was collected for urinalysis which showed blood, bacteria and increased white blood cell count indicative of a mild urinary tract infection ("UTI").  *Id*. ¶¶ 4-5.  Follow-up urinalysis on samples collected from Plaintiff on May 7 and 13, 2002 established that by May 13, 2002, Plaintiff's urine was normal.  *Id*. ¶ 6.

On April 30, 2002, Plaintiff was seen by Nurse Peters[3] in connection with complaints of problems with his right ear.  Upon examination, Nurse Peters observed no bruising or swelling and scheduled an ear examination.

When Nurse Brink next saw Plaintiff on May 1, 2002, Plaintiff complained that he was unable to hear out of his right ear.  Brink found no outward sign of injury and discussed the matter with staff from Southport's mental health unit, advising of Plaintiff's recent allegations of paranoia.  Brink noted in Plaintiff's medical chart that Plaintiff would sporadically refuse his morning psychiatric medications and that an ear examination was pending.

On May 2, 2002, Nurse Brink, at the request of Southport's security staff, examined Plaintiff in connection with Plaintiff's complaint that he had recently been the subject of an excessive use of force, which revealed a mark on Plaintiff's nose, a right

---

[3] Nurse Peters is not a party to this action.

swollen ear, a bump on the back of Plaintiff's head, a sore right rib, bilateral flank

soreness, and a mark between Plaintiff's fourth and fifth left fingers.  Upon a complete

physical examination of Plaintiff in his underwear, Nurse Brink observed only a 3 cm

superficial abrasion on Plaintiff's nose, and a 2 cm superficial abrasion on Plaintiff's

knuckle.  Otherwise, Plaintiff had no swelling or trauma about his ears, his ear canals

were healthy, there were no bumps or bruising on Plaintiff's head, his lungs were clear,

Plaintiff ambulated without difficulty and had full range of motion in all extremities, digits

were normal, all skin was intact, and Plaintiff required no medication.

**The June 4, 2002 Incident**

As to the incident Plaintiff claims occurred on June 4, 2002, Plaintiff alleges Sgt.

Furman advised that Plaintiff was being moved from C-Block, 2-Company, 6-Cell to C-

Block, 1-Company, 15-Cell, and while escorting Plaintiff to the new cell, remarked that

such cell "was technically our of order, but that was where [Plaintiff] was being placed."

Second Claim for Relief, Amended Complaint at 6.  Plaintiff describes his new cell as

"not in living condition," as the toilet did not flush, the sink's cold water did not work,

although the hot water was on and would not stop running, the cell's floor was covered

with water and grime, and the cell mattress was wet with water or urine. *Id*.  Plaintiff

maintains that upon informing Furman of the cell's conditions, Furman ignored Plaintiff

and walked away.  *Id*.

According to Plaintiff, later that day, Defendant Murphy dropped two of Plaintiff's

books into Plaintiff's cell.  Amended Complaint at 6.  When Plaintiff asked about his

other personal property, including legal materials, bed sheets, letters, photographs, and

other items, Murphy "just walked away." *Id*.  Plaintiff also maintains that Murphy failed to provide Plaintiff with lunch, and when Plaintiff complained to Sgt. Furman about not receiving his luncheon meal, Furman acted as though he could not hear Plaintiff and walked away. *Id*.

Plaintiff asserts that the stress Defendants caused Plaintiff on June 4, 2002, "gave me a mental breakdown," such that after dinner, Plaintiff ate and smeared feces on his body, face and around his cell.  Amended Complaint at 6-7.  Plaintiff further maintains he slashed his wrist and forearm with a medication tube and that when he showed such wounds to Defendant Losito and requested help, Losito did nothing.  *Id*. at 7.  Defendants Losito and Nurse Hersh later stopped by Plaintiff's cell and, upon observing the blood and feces smeared on Plaintiff and around the cell, as well as the slash marks on Plaintiff's arms for which Plaintiff again requested help, Losito and Hersh laughed and Hersh stated "You want to kill yourself?  Use your socks and hang yourself from the bars," and then walked away.  *Id*.

On June 5, 2002, at 7:10 A.M., Nurse Peters stopped by Plaintiff's cell and advised that she was going to get Plaintiff some help.  At 9:15 A.M. on June 5, 2002, two unidentified corrections officers and a sergeant removed Plaintiff, who was covered in feces and crying uncontrollably, from the cell and escorted to the infirmary.  Plaintiff was never returned to the cell where the alleged actions on June 4th and 5th took place.

Defendants maintain that when Sgt. Furman placed Plaintiff in the new cell on June 4, 2002, Plaintiff did not inform Furman of any problems with the cell's conditions.

Rather, according to Southport's logbook,[4] Plaintiff was placed in the new cell on June 4, 2002, at 2:30 P.M., after Plaintiff made threats against Defendant Murphy. The officer making rounds at 5:15 P.M. that same day observed that Plaintiff had wiped feces on the cell's walls. Southport's logbook indicates that on June 5, 2002, at 9:10 A.M., Mr. Militello, a mental health worker from the New York State Office of Mental Health, visited Plaintiff and, by 10:10 A.M. on June 5, 2002, Plaintiff had been transferred to Southport's infirmary.

According to Plaintiff's medical records, on June 4, 2002, Plaintiff was examined at 7:30 P.M., by Nurse Whedon[5] who noted that Plaintiff complained of a rash and dryness on his lower legs. June 4, 2002 Medical Records, Weed Declaration Exh. A. On June 5, 2002, Plaintiff was transferred from Southport to the Elmira Correctional Facility ("Elmira").

According to Outpatient Psychiatric Progress Notes prepared by Militello and submitted by Plaintiff ("Outpatient Psychiatric Progress Notes"), Plaintiff's Exh. W, when Plaintiff was transferred to Elmira on June 5, 2002, Plaintiff exhibited anger, self-harm, threats to self-harm, was withdrawn, had regressed and had behavioral problems including scratching his wrists, and smearing feces on himself. Plaintiff was noted to have an extensive pyschiatric history. Plaintiff was diagnosed with schizophrenia and antisocial personality disorder, and was further noted with self-harm gestures, and tendencies toward exposing himself to females and violence. On June 24, 2003, Mr.

---

[4] Copies of the relevant portions of Southport's logbook are attached as Exh. A to the Furman Declaration.

[5] Nurse Whedon is not a party to this action.

H.E. Smith ("Smith"), Executive Director of Central New York Psychiatric Center filed a petition ("the Petition") in New York Supreme Court, Oneida County, seeking an order pursuant to New York Correction Law § 402, committing Plaintiff to a state hospital for the mentally ill.  Plaintiff's Exh. X.  According to Smith, the Petition was based on an examination of Plaintiff conducted by prison physicians[6] on June 23, 2002.  *Id*.

## DISCUSSION

1.    **Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255); *Rattner*, 930 F.2d at 209.  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is

---

[6] The record does not specify whether such "physicians" included a psychiatrist.

"genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

Here, Plaintiff alleges Defendants violated his civil rights under 42 U.S.C. § 1983. Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  However, "Section 1983 'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394, (1989); and *Baker*, 443 U.S. at 140).

Based on the incident of April 26, 2002, Plaintiff claims violations of his Eight Amendment rights when Defendants Furman, Bly, Carpenter and Lanasa used excessive force on him, and when Defendants Furman, Bly, Carpenter, Lanasa and Brink acted with deliberate indifference to Plaintiff's medical needs.  Amended Complaint at 5.  Based on the incident of June 4, 2002, Plaintiff alleges violations of his Eighth Amendment rights against cruel and unusual punishment occurred when Defendant Sgt. Furman placed Plaintiff in an unsanitary cell and refused to resolve Plaintiff's complaints of not being served a meal and providing clean bedding, and Murphy withheld from Plaintiff food, clean bedding and Plaintiff's personal property. Amended Complaint at 7.  Plaintiff further claims Losito and Hersh violated his Eighth Amendment rights by acting with deliberate indifference to Plaintiff's psychiatric and

medical needs.  *Id*. at 7-8.[7]


## 2.    Eighth Amendment

Plaintiff's claims of excessive force, deliberate indifference to medical needs, and unsanitary conditions of confinement pertaining to the separate incidents on April 26, 2002 and June 4, 2002 all arise under the Eighth Amendment.  In particular, the Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment. U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d cir. 1993).  Not every governmental action affecting the interests or well-being of a prisoner, however, is subject to Eighth Amendment protections.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Rather, only the unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment forbidden by the Eighth Amendment.  *Id*.  Nevertheless, within the ambit of the Eighth Amendment are protections against the use of excessive force, deliberate indifference to an inmate's serious medical need, and inhumane conditions of confinement.  *See Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement,

---

[7] Although Defendants assert as an affirmative defense that Plaintiff failed to exhaust administrative remedies for any of the instant claims, Answer filed by Defendants Sgt. Furman, Bly, Brink, Carpenter, and Losito (Doc. No. 22), ¶ 17; Answer filed by Defendants Hersh, Lanasa and Murphy (Doc. NO. 49) ¶ 18, Defendants have not moved for summary judgment on that ground.  Further, it is unclear from the record whether Plaintiff has, in fact, exhausted his administrative remedies.  *See* Amended Complaint, Inmate Grievance Program Superintendent Statement (advising Plaintiff his grievance was untimely and granting Plaintiff permission to appeal to the Superintendent's Office, but failing to disclose whether Plaintiff ever pursued such appeal).  The court takes no position as to whether Defendants can now move for leave to amend the scheduling order to permit further dispositive motions as to the exhaustion issue after the cut-off date provided in the Scheduling Order (Doc. No. 53) for dispositive motions.  Accordingly, for the purposes of the instant motion, no exhaustion of remedies defense is before the court.

and denial of medical care).

### A.     Excessive Force

Defendants argue in support of summary judgment that despite Plaintiff's claims asserted in the Amended Complaint and by Plaintiff in his affidavit opposing summary judgment, there is a complete lack of any objective evidence supporting Plaintiff's assertion that on April 26, 2002, he was subjected to excessive force, resulting in injuries for which Plaintiff was subsequently denied medical treatment.  Defendants' Memorandum at 3-9.  In opposition to summary judgment, Plaintiff submits the affidavit of David Albelo ("Albelo") ("Albelo Affidavit"), an inmate who was also confined in Southport's C-Block on April 26, 2002, and who witnessed the incident.  Albelo Affidavit, Plaintiff's Exh. A, ¶ 1-4.

In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillan*, 503 U.S. 1, 7 (1992).  An inmate plaintiff claiming that prison officials subjected him to cruel and unusual punishment by use of excessive force must establish both an objective and subjective component of the claim.  *Romano*, 998 F.2d at 105.

Objectively, a § 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions. *Romano*, 998 F.S2d at 104, *see also Wilson*, 501 U.S. at 296.  This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8.  Thus,

while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in any serious injury. *Id*. at 9-10; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").   An inmate's constitutional protections against excessive force by corrections officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson*, 481 F.2d at 1033; *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y. 1988).

In the instant case, Plaintiff has filed in opposition to summary judgment the affidavit of David Albelo ("Albelo") ("Albelo Affidavit"), an inmate who was also confined in Southport's C-Block on April 26, 2002, and who claims to have witnessed the incident.  Albelo Affidavit, Plaintiff's Exh. A, ¶ 1-4.  Albelo avers he observed Sgt. Furman strike Plaintiff in the side of the head, causing Plaintiff to fall to the floor, and then observed Furman, Bly, Carpenter and two other corrections officers punch and kick Plaintiff as he lay on the floor in handcuffs and chains.  *Id*. ¶ 5.  According to Albelo, he and other inmates screamed for the officers to stop assaulting Plaintiff, *id*. ¶ 6, but that "Plaintiff was then half dragged and half walked to his cell while officer Bly slapped him."  *Id*. ¶ 7.  Albelo further stated that he was concerned about Plaintiff's well-being and asked the "unit officer" to check on Plaintiff, but the unit officer told Albelo to "mind your business, it does not concern[ ] you."  *Id*. ¶ 9.

The statements contained in the Albelo Affidavit contradicts the statements made by Defendants in support of summary judgment in which Defendants, while

admitting that Plaintiff was placed in handcuffs and chained, deny that any force was used in returning Plaintiff to his cell on the morning of April 26, 2002, following Plaintiff's refusal to comply with Sgt. Furman's order to stop turning his head while being pat-frisked in preparation for the exercise run.  Furman Declaration ¶¶ 5-10; Bly Declaration ¶¶ 5-7; Carpenter Declaration ¶¶ 5-8.

Nor is the fact that Plaintiff's medical records are devoid of any evidence that Plaintiff was injured in the April 26, 2002 dispositive of the claim.  Rather, an Eighth Amendment excessive force claim does not require any serious injury.  *Hudson*, 503 U.S.  at 8; *Johnson*, 481 F.2d at 1028.  Furthermore, the record on this motion establishes that Plaintiff was not thoroughly examined in connection with his complaints following the April 26, 2002 incident until May 2, 2002, almost a week later, during which time more minor injuries would likely become less apparent.  Had Plaintiff undergone a thorough examination on April 26, 2002, the two abrasions observed on May 2, 2002, including the 3 cm superficial abrasion on Plaintiff's nose, and the 2 cm superficial abrasion on Plaintiff's knuckle, would likely have appeared more palpable and thus more serious.  As such, there is a material issue of fact as to the first prong of Plaintiff's excessive force claim, and the court next considers the second, subjective prong of the claim.

The subjective component of an Eighth Amendment excessive force claim requires that the defendants act malicious and with the intent to harm the inmate plaintiff.  *Hudson*, 503 U.S. at 7; *Romano*, 998 F.2d at 105.  To determine whether the defendants acted maliciously, the trier of fact should consider (1) the extent of the plaintiff's injuries; (2) the need for the application of force; (3) the correlation between

the need for force and the amount of force used; (4) the threat reasonably perceived by the defendants; and (5) any efforts made by the defendants to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.  Here, the record also establishes a material issue of fact as to whether Plaintiff was subjected to the use of any force in being returned to his cell on April 26, 2002 and, if so, whether the use of such force was reasonable.

Specifically, as discussed above, *supra*, at 5, Defendants admit that Plaintiff was both handcuffed and restrained with a wrist chain before being escorted to his cell on April 26, 2002, but deny any force was used against Plaintiff, in contrast to Plaintiff's allegations, corroborated by Albelo, that Defendants struck Plaintiff in the side of the head, knocking Plaintiff to the ground, and then continued to punch and kick plaintiff while he lay in on the floor, still restrained by handcuffs and the chain.  Defendants' assertion that no force was used implies that any threat posed by Plaintiff was small, such that any use of force by Defendants could be disproportionate.  It is significant that Defendants do not challenge the accuracy or authenticity of the Albelo Affidavit, which is both signed and notarized as required to be considered admissible evidence.  This unresolved factual issue as to the subjective prong of Plaintiff's excessive force claim is not only material, but also sufficient to preclude summary judgment.

Summary judgment on Plaintiff's excessive force claim arising from the April 26, 2002 incident is DENIED.


### B.     Deliberate Indifference to Serious Medical Need

Defendants also maintain that the record contains no objective evidence

supporting Plaintiff's alleged injuries resulting from Defendants alleged use of excessive force on April 26, 2002, or that Plaintiff was denied necessary medical treatment for any serious injury.  *Id*. at 9-12.  According to Defendants, the record also fails to contain any evidence that on June 4, 2002, Plaintiff experienced a mental breakdown for which he was denied appropriate psychiatric care.  *Id*. at 17-19.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)).  A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at 702.  The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference.  *Estelle*, 429 U.S. at 104; *see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute and pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist,

precluding summary judgment in defendant's favor).  Such delay in treatment violates

the Eighth Amendment "whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards by intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once

prescribed."  *Estelle*, 429 U.S. at 104-05.  Further, culpable intent requires the inmate

establish both that a prison official "has knowledge that an inmate faces a substantial

risk of serious harm and he disregards that risk by failing to take reasonable measures

to abate the harm."  *Hayes v. New York City Department of Corrections*, 84 F.3d 614,

620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

Nevertheless, neither "inadvertent failures to provide adequate medical care" nor

"negligence in diagnosing or treating a medical condition" comprise Eighth Amendment

violations.  *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a

constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at

139 ("We agree that the mere malpractice of medicine does not amount to an Eighth

Amendment violation.").  Nor does a "mere disagreement" with a physician over the

appropriate course of treatment arise to a constitutional violation, although in certain

instances a physician may evince deliberate indifference by consciously choosing "an

easier and less efficacious" treatment plan.  *Chance*, 143 F.3d at 703.

As to the objective prong, a sufficiently serious conditions is "a condition of

urgency, one that may produce death, degeneration or extreme pain."  *Hathaway*, 99

F.3d at 66.  In the instant case, the record is devoid of any evidence establishing that

Plaintiff, in connection with either incident, had any medical urgency that might produce

death, degeneration or extreme pain.  Rather, the record demonstrates that any injury

inflicted on Plaintiff in connection with the April 26, 2002 incident was relatively minor, given that by the time Plaintiff underwent the thorough physical examination on May 2, 2002, only two small abrasions were discovered.  As such, assuming, *arguendo*, that on April 26, 2002, Plaintiff did in fact suffer the alleged injuries, including soreness, pain in and a lump behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs and legs, Amended Complaint at 4, such injuries do not constitute the requisite "serious medical condition" necessary to establish an Eight Amendment deliberate indifference claim.  *Compare Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998) (reversing district court's grant of summary judgment in favor of defendants on inmate plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim where inmate suffered from ruptured Achilles tendon, which remained swollen and painful, requiring plaintiff use crutches to walk, which was originally diagnosed as a bad sprain, yet defendants failed for two months to provide proper treatment despite fact that plaintiff's disabling condition was "easily observable").  That by May 2, 2002, such injuries had healed without any medical treatment further establishes that the injuries were not likely to produce death, degeneration or extreme pain without urgent medical treatment.  Additionally, that Plaintiff, on April 28, 2002, reported he was passing blood in his urine, yet failed at that time to make any other complaints, demonstrates that Plaintiff's claimed injuries had already sufficiently healed such that urgent treatment for them was never required. That Plaintiff received timely medical care in response to such complaint, including collecting a urine sample which, upon analysis, showed evidence of a mild UTI, rather than any trauma, further undermines Plaintiff's asserted denial of urgent medical care.

The record thus fails to establish any factual issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to the April 26, 2002 incident.

The record is similarly deficient as to the June 4, 2002 incident.  Specifically, although Plaintiff claims that he had a "mental breakdown" after he was placed in the allegedly unsanitary cell, which caused him to eat and smear feces on himself, and to attempt to slash his wrists with a medication tube, Amended Complaint, at 7, the record shows that Plaintiff was first observed to have wiped feces on himself and the walls of his cell at 5:15 P.M. on June 4, 2002, less than three hours after Plaintiff was moved to the cell.  Prison Logbook, Furman Declaration Exh. A.  At 7:10 P.M. that same day, Plaintiff was seen by Nurse Whedon in connection with Plaintiff's complaints of a rash and dryness on his lower legs.  Weed Declaration ¶ 4 and Exh. A, Plaintiff's Ambulatory Health Record for June 4, 2002.  In fact, two affidavits submitted by Plaintiff in opposition to summary judgment corroborate the fact that Plaintiff was seen by a nurse in the evening of June 4, 2002.  *See* Plaintiff's Exhs. T (Affidavit of Inmate Bussey ("Bussey Affidavit")) and U (Affidavit of Inmate Douglas ("Douglas Affidavit")).[8] Significantly, Whedon did not note any injury to Plaintiff's wrists.  Moreover, the very next morning, June 5, 2002, at 9:10 A.M., Plaintiff was seen by a mental health worker, Mr. Militello, who had Plaintiff transferred to the infirmary and then transferred to Elmira for reevaluation of Plaintiff's schizophrenia diagnosis because Plaintiff was exhibiting

---

[8] Both Bussey and Douglas state that at 6:30 P.M. on June 24, 2002, Defendant Nurse Hersh, accompanied by C.O. Losito, stopped at Plaintiff's cell and while dispensing nighttime medications. Bussey Affidavit ¶ 10; Douglas Affidavit ¶ 10.

signs of mental illness.  Furman Declaration ¶¶ 14-15; Outpatient Psychiatric Progress

Notes, Plaintiff's Exh. W.  Militello also reported that Plaintiff exhibited anger, was

threatening to harm himself, had smeared feces on himself, and described Plaintiff as

having "scratched wrists," Outpatient Psychiatric Progress Notes, but did not report any

physical or mental condition arising to a serious medical need for which treatment had

been denied.  Rather, the record establishes that Defendants realized in the evening of

June 4, 2002 that Plaintiff was experiencing some mental issues for which help was

provided the next morning.  The record thus fails to establish any factual issue which, if

decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate

indifference claim with regard to the June 24, 2002 incident.

Because Plaintiff has failed to establish the objective prong for his deliberate

indifference claim as to either the April 26 or June 4, 2002 incident, the court need not

address whether Plaintiff can establish the subjective prong as to either incident.

Summary judgment as to Plaintiff's claim that Defendants acted with deliberate

indifference to his serious medical needs is GRANTED as to Defendants.

### C.    Conditions of Confinement

Defendants argue in support of summary judgment that the alleged unsanitary

conditions of the cell to which Plaintiff was transferred on June 4, 2002, even if true, are

insufficient to support Plaintiff's claims that he was subjected to cruel and unusual

punishment in violation of the Eighth Amendment.  Defendants' Memorandum at 13-15.

Nor does Defendant Murphy's failure to serve Plaintiff lunch one day constitute any

Eighth Amendment claim.  *Id*. at 15-17.  In opposition to summary judgment, Plaintiff

submits the Bussey and Douglas Affidavits in which Southport inmates Bussey and

Douglas corroborate Plaintiff's assertions that Plaintiff, upon being placed in a different

cell on June 4, 2002, complained of the living conditions in the cell, or the fact that he

was not served lunch, and that although Defendant Murphy dropped two of Plaintiff's

books into Plaintiff's cell, Plaintiff's request for the rest of his personal belongings were

ignored.  Bussey Affidavit ¶¶ 3-6; Douglas Affidavit ¶¶ 3-6.

To establish an Eighth Amendment violation based on prison conditions, a

plaintiff must demonstrate "that it is contrary to current standards of decency for anyone

to be exposed against his will" to the challenged prison conditions.  *Helling v.*

*McKinney*, 509 U.S. 25, 35 (1993).

> An Eighth Amendment claim based on prison conditions must satisfy
>
> both an objective element - - that the prison official's transgression was "sufficiently serious" - - and an objective element - - that the officials acted, or omitted to act, with a "sufficiently culpable state of mind," *i.e.*, with "deliberate indifference to inmate health or safety."

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at
834).

As to the objective element, while the Constitution "does not mandate comfortable

prisons," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), prison inmates may not be

denied "the minimal civilized measure of life's necessities."  *Id*. at 347.  The Supreme

Court has held that the Eighth Amendment requires that inmates not be deprived of

their "basic human needs - - *e.g.*, food, clothing, shelter, medical care, and reasonable

safety."  *Helling*, 509 U.S. at 32 (internal citation and quotation omitted).  "Nor may

prison officials expose prisoners to conditions that 'pose an unreasonable risk of

serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling*, 509

U.S. at 35).   The Eighth Amendment's objective prong requires an inmate "prove that

the conditions of his confinement violate contemporary standards of decency."   *Id*.

As to the subjective element, the Supreme Court has held that

a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837.

The "deliberate indifference" element is equivalent to criminal law's reckless

indifference standard.   *Id*. at 839-40.

In the instant case, Plaintiff's Eighth Amendment claim fails to satisfy the

objective element necessary to state a claim based on prison conditions.   Although

Plaintiff claims the cell to which he was moved on June 4, 2002 was dirty, the mattress

was wet, no bedding was provided, the cell sink's cold water did not work, while the hot

water continually ran, and Plaintiff missed receiving one meal, the amount of time for

which Plaintiff endured such conditions, less than one full day, renders the claim

without merit.   *See Hutto v. Finney*, 437 U.S. 678, 687 (1978) ("the length of

confinement cannot be ignored in deciding whether the confinement meets

constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' [*sic*] might be

tolerable for a few days and intolerably cruel for weeks and months.").   As such,

Defendant's motion for summary judgment is GRANTED as to Plaintiff's claim

challenging the conditions of his confinement based on the June 4, 2002 incident.

### 3.    Deprivation of Property

Although not asserted as such, Plaintiff's claim that upon being transferred to a different cell on June 4, 2002, Defendants failed to give Plaintiff his personal property is properly construed under the Fourteenth Amendment as asserting a deprivation of property without due process.  Nevertheless, no claim under 42 U.S.C. § 1983 lies based on the negligent conduct of a state actor even though such conduct may result in deprivation of a property interest.  *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Further, even intentional, unauthorized deprivations of property by prison officials are not redressable pursuant to 42 U.S.C. §1983 if "adequate state post-deprivation remedies are available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In New York, several adequate post-deprivation remedies are available such that even if Defendants either negligently or intentionally failed to provide Plaintiff with his personal property, no claim for relief under § 1983 lies.

Specifically, an administrative procedure for inmate personal property claims is provided by N.Y. Comp. Codes R. & Regs. Tit. 7, Pt. 1700.  Plaintiff may also commence an action to recover the value of his lost property in New York Court of Claims.  *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990)(holding that New York court of claims presents adequate post-deprivation remedy which precludes § 1983 action only where alleged deprivation was result of random, unauthorized conduct rather than the result of operation of established state procedure).  Plaintiff alleges no state policy caused the alleged interference with his property.  As such, Plaintiff may not sue under § 1983 to recover for deprivation of personal property.  *Hudson*, 468 U.S. at 533.

25

Summary judgment is thus GRANTED in favor of Defendants on Plaintiff's

Fourteenth Amendment Due Process claim based on the June 4, 2002 incident.


**4.    Qualified Immunity**

Alternatively, Defendants assert they are entitled to qualified immunity on all

claims for damages.  Defendants' Memorandum at 19-21.  Plaintiff has not responded

to this argument.  Because the court is granting summary judgment on Plaintiff's claims

alleging deliberate indifference to his serious medical needs and challenging the

conditions of his confinement, as well as on Plaintiff's Fourteenth Amendment due

process claim, the court addresses qualified immunity only as to Plaintiff's excessive

force claim.

Qualified immunity shields law enforcement officials who perform discretionary

functions from liability if their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable prison official would have known.  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*,

907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue was clearly established, if

it was objectively reasonable for the defendant to believe that his act did not violate the

plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified

immunity. *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v. Creighton*, 483

U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir.

1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d

Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The availability of the

defense depends on whether a reasonable officer could have believed his action to be

lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997). If, however, it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity. *Robison*, 821 F.2d at 920-21.

A defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduces[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff. . . could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, 821 F.2d at 921 (internal quotation omitted). Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996). Provided that no factual issues are disputed, the

application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).  Accordingly, as to Plaintiff's excessive force claim, the court must evaluate whether Defendants' actions, in light of clearly established law in existence as of April 26, 2002, violated Plaintiff's civil rights.

Prison inmates have a clearly established right to be free from the application of excessive force by prison employees.  *Hudson*, 503 U.S. at 7.  However, a prisoner does not have a clearly established right to be free from the use of force by corrections officers attempting to subdue the prisoner with regard to a physical altercation and whether Defendants' conduct violated a clearly established right is not dependent on whether identical conduct has been previously held to violate a prisoner's constitutional rights.  *See Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002) (for purposes of qualified immunity, notice that a corrections officer's conduct violates established law does not require facts of previous cases be materially or fundamentally similar to situation in question, but that state of law at relevant time provides fair warning that conduct is unconstitutional).

Here, the same disputed issues of fact that preclude summary judgment on Plaintiff's excessive force claim also prevent the court from finding Defendants are qualifiedly immune from liability on such claim.  Accordingly, determination of Defendants' qualified immunity defense must await a fact trier's resolution of the questions of fact presented.  Summary judgment based on qualified immunity is DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 58) is DENIED in part and GRANTED in part.  The action will proceed only on Plaintiff's Eighth Amendment excessive force claim asserted against Defendants Sgt. Furman, Bly, Carpenter and Lanasa based on the April 26, 2002 incident.  The parties are directed to appear before the court on **April 18, 2007** at 10:30 A.M. to schedule a trial date.  Defendants are directed to make arrangements for Plaintiff to participate in the conference by telephone.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 21, 2007
            Buffalo, New York